Defendants cite **Weyant v Okst**, 101 F3d 845 (2d Cir, NY, 1996). **Weyant** was a case involving a pretrial detainee's claim that denial of medical treatment was deliberate indifference and violated due process. The **Weyant** court held that the Plaintiff "was a pretrial detainee, not a person who had been convicted and hence the Eighth Amendment did not apply." The **Weyant** court's focus on Plaintiff's status as a pretrial detainee is not gratuitous. The Eighth Amendment standard places in issue the subjective motivations of the individual officers. See **Graham v Connor**, 490 US 386, 397, 109 S Ct 1865, 1872 (1989). The less protective Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions". **Ingraham v Wright**, 430 US 651, 671, n. 40, 97 S Ct 1401, 1412, n. 40 (1977).

> [Thus,] [t]he choice of the applicable standard depends upon where in the criminal continuum, [a] plaintiff was when he claims [he was subjected to excessive force...**Powell** [**v Gardner**, 891 F2d 1039-1044 (2d Cir 1989)] thus seems to require application of the Fourth Amendment at least until plaintiff's pretrial custody status is ordered by a judicial officer, as upon arraignment either resulting in an order of pretrial regulatory detention or the setting of bail conditions not met yet. It makes sense to hold the police to an objective standard of reasonableness before a judicial officer commits an arrestee to a pretrial holding facility the administration of which is customarily accorded some degree of deference by federal courts.
>
> **Freece v Young**, 756 F Supp 699, 703-704 (WDNY 1991)

The **Weyant** court provided further clarification:

> ...this court in **Liscio v Warren** used an *objective standard*, requiring determination of what the official knew or should have known, see, e.g., 901 F2d at 276-277 (despite pretrial detainee's failure to mention his alcoholism, physician was "on notice" that detainee might be suffering from alcohol withdrawal because he exhibited symptoms commonly associated with such withdrawal.)

**Liscio v Warren**, 901 F2d 274, 276-77 (2d Cir. 1990)(*emphasis supplied*).

The Defendants Memorandum asks the Court to rely on its recitation of a Statement of Facts which does not suffer the inconvenience of cited support. The Defendants inappropriate parsing of facts manufactures such a degree of distortion that they feel empowered to claim as undisputed:

> ....3. Bowen, Squires, and Angell never saw Cotton put anything in his mouth; and
> 4. Bowen, Squires, and Angell never saw Cotton swallow anything. See Local rule 9(c)(1)Statement.

*Def's Memo.* p 14-15.

This Court, in order to accept the Defendants claims that these facts are undisputed, merely has to disregard the deposition testimonies of Bowen, Angell, Squires, and Akesson, as well as the information that was given to, acted upon and reported by the Police dispatcher and the triage nurse at Hartford Hospital.

**Conclusion**: The Defendants claim of entitlement to the benefit of "Qualified Immunity" is based upon a misreading of applicable law. This misreading has been superimposed upon an inappropriately muscular parsing and vivid distortion of the source materials Plaintiff has cited throughout its Statement of Facts. *Supra, p* 2. Plaintiff has, in the stew of conflicting versions that have been offered by the Defendants, a version which- if accepted- would establish: (1) that the Defendants directed an attack trained canine to inflict multiple bite injuries -- at a time when Cotton had been determined to be weaponless; at a time when he was not a risk for flight; at a time when his coordination and perception reflected the confusion of one high on drugs; at a time when he had been

observed swallowing an unknown quantity of drugs and following defendants' perception that he may all ready have passed out from snorting cocaine. (2) that Defendants knew from training and experience that Cotton was in need of medical assistance as a consequence of the combined snorting and ingestion of drugs that had been deduced and observed; that despite this knowledge and despite a conversation that acknowledged the propriety of summoning medical assistance, two of the Defendants decided to take plaintiff to Windsor police headquarters where they maced him and sprayed him with a water hose - while he remained handcuffed and on his knees- in an attempt to extricate the bags of drugs that they had seen Cotton swallow even though these assaultive attempts were contrary to the Defendants training and experience; served no practical goal of law enforcement; and posed a substantial and unreasonable threat of exacerbating Cotton's declining condition.

> Where there are material facts in dispute relevant to the determination of reasonableness in the context of an excessive force claim, the Court may not grant summary judgment.
>
> **Thompson v Meriden**, 1999 WL 301693, (D. Conn) *8.

## DEFENDANTS ASSERTION THAT PLAINTIFF HAS FAILED TO STATE A STATE CONSTITUTIONAL TORT UNDER BINETTE V SABO, 224 CONN 23 (1998) APPEARS TO HAVE BEEN BASED UPON A MISREADING OF PLAINTIFF'S COMPLAINT

Defendants may have intended to pose a serious argument. The capacity to take seriously, what they have published, is undercut by their interpretation of Plaintiff's Amended Complaint as "one state constitutional claim which is distilled to the claim that Hynes set his bail too high given all the circumstances." See, *Def's Memo*, p 18. The defendants ensuing argument never once betrays that their course of reasoning is

influenced by anything other than "Hynes' setting of bail". Id. The Defendant's ensuing argument is never distracted by the need to link the factual assertions set forth in the Amended Complaint, filed by the Estate of Cotton, with the criteria set forth in **Binette**. Plaintiff can only hope that the Defendants' distraction continued through that point, in processing this component of their argument, when they wrote - "There is nothing particularly striking about the purported unconstitutional conduct." Plaintiff's complaint, alleging that there has been a wrongful death, surely would otherwise be entitled to a less dismissive tone. Further reply would not appear necessary.

**DEFENDANTS' FALLBACK POSITION, WHICH ASSUMES THERE TO BE A STATE CONSTITUTIONAL TORT, SIMPLY INCORPORATES THEIR CLAIM OF ENTITLEMENT TO THE BENEFIT OF "QUALIFIED IMMUNITY". PLAINTIFF RESPONDS BY INCORPORATION OF ITS CONTENTION THAT SAID DOCTRINE DOES NOT APPLY TO THE FACTS OF THIS CASE.**

**DEFENDANTS ATTEMPT TO INVOKE THE DOCTRINE OF SOVEREIGN IMMUNITY IS UNAVAILING**

The doctrine of sovereign immunity is not available to the defendants in the current action for any one of four different reasons:

(1) The first count is an assault claim and therefore seeks to hold the defendants accountable for behavior that falls outside the proper performance of their statutory authority;

(2) the fourth count, sounding in negligence, falls within an exception for sovereign immunity, even for discretionary acts, when the complained of circumstances make it apparent, to the defendant police officer, that his failure to act would likely subject an identifiable person to imminent harm;

(3) CGS 7-465 is a waiver of sovereign immunity;

(4) The provisions of CGS 7-465 preclude Defendants' counsel from asserting a defense in behalf of the municipality that would leave any of the defendants exposed for individual payment of the verdict.

Each of these differing reasons is discussed in turn.

(1) *The doctrine of sovereign immunity cannot be invoked against a claim of assaultive behavior.*

> This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others. **Doe v. Heintz**, 204 Conn. 17, 31, 526 A.2d 1318 (1987); see also 57 Am.Jur.2d, Municipal, County, School and State Tort Liability § 61 et seq. (1988).
> "It does not necessarily follow ... that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as to clothe the defendants with immunity from suit." **Simmons v. Parizek**, 158 Conn. 304, 307, 259 A.2d 642 (1969).
>
> **Antinerella v. Rioux** 229 Conn. 479, 487-488, 642 A.2d 699, 703 (Conn., 1994)

Sovereign immunity simply cannot have greater power than the constitution that created it:

> The principle of sovereign immunity ... rests in the people themselves, who have adopted constitutions creating governments *with defined limited powers* and courts to interpret these basic laws. The source of the sovereign power of the state is the Constitution which created it.
>
> **Horton v. Meskill**, 172 Conn. 615, 624 (1977).

> When a state official's acts are in excess of legal authority or constitutes an erroneous exercise of that authority, the interest in the protection of the plaintiff's right to be free from the consequences of such actions outweighs the interest to be served by the sovereign immunity doctrine.
>
> **Pamela B. v. Aaron Ment**, 244 Conn. 296, 328 (1998)

> **Antinerella v. Rioux**, [229 Conn. 479, (1994)] 229 Conn. at 489, 642 A.2d 699, was the first case in which we were called upon actually to apply the doctrine that sovereign immunity "does not apply to suits against state officials acting in excess of their statutory authority...."
>
> **Shay v. Rossi** 253 Conn. 134, 169, 749 A.2d 1147, 1166 (Conn., 2000)

> We have never defined the precise contours of the "in excess of statutory authority" doctrine; *id.*, at 489, 642 A.2d 699; which removes the shield of sovereign immunity from state officials sued in their official capacities. Thus, we have never decided just how far outside that statutory authority the official must act in order for the doctrine to apply
>
> **Shay v. Rossi** 253 Conn. 134, 170, 749 A.2d 1147, 1166 (Conn.,2000)

> [A] plaintiff must allege more than violation of a statute or lack of specific statutory authorization, but need not allege conduct so outside statutory authority that the officer could no longer be considered acting within his or her official role.
>
> **Russo v. City of Hartford** 184 F.Supp.2d 169, 182 (D.Conn.,2002)

The **Shay** Court concluded that specified factual allegations (as distinguished from mere conclusory characterizations of behavior) which identified the Defendants' conduct as being without foundation, unreasonable, arbitrary, wanton, reckless and malicious, would be "sufficient to establish the defendants' conduct was sufficiently egregious as to constitute conduct that was in in excess of their statutory authority." **Shay v. Rossi** 253 Conn. 134, 180, 749 A.2d 1147, 1171 (Conn.,2000). The **Shay** Court, not to put too fine a point on it, concluded:

> The same facts and allegations that led us to conclude that the defendants' conduct was in excess of their statutory authority, lead us to conclude that the defendants could be found to have acted wantonly, recklessly or maliciously.
>
> **Shay v. Rossi** 253 Conn. 134, 182, 749 A.2d 1147, 1172 (Conn.,2000)

**Conclusion**: The "critical factual allegations of Plaintiff's complaint are that the Defendants, "acting in concert and ... at a time and under circumstances that made it apparent to a person of reasonable intelligence that no practical medical or law enforcement purpose would be served: caused, permitted or directed an attack trained

canine to bite Plaintiff's decedent; caused, permitted or directed Plaintiff to be maced; and caused, permitted or directed Plaintiff to be hosed down. Plaintiff specified the circumstances which made the absence of medical or law enforcement purposes "apparent to a person of reasonable intelligence". Plaintiff identified, in paragraphs 9-13 of its complaint, that Defendants' assaultive conduct was carried out at a time when Defendants knew that Plaintiff had an unknown quantity of crack cocaine lodged in his throat which was interfering with his air passages, his capacity to swallow and his capacity to speak. These allegations, if proven, would be "sufficient to establish that the defendants' conduct was sufficiently egregious as to constitute conduct that was in excess of their statutory authority." **Shay v. Rossi** 253 Conn. 134, 180, 749 A.2d 1147, 1171 (Conn.,2000).

*(2) Plaintiff's fourth count, falls within an exception for sovereign immunity, even for discretionary acts, since it identifies that the defendants' failure to act would likely subject Plaintiff to imminent harm;*

> If the general duties of a public official are brought to focus on circumstances in which a particular citizen ... [is] foreseeably subject to real risk of injury at the hands of one who is within the realm of the officer's duties, and whose conduct may properly and reasonably be the subject of the officer's discharge of his duties, then the officer's duties to the public at large can legitimately be said to have created a duty to an individual citizen. See **Cimino v Yale Univ.**, 638 F Supp 952, 960-61 (D. Conn 1986).
>
> **Doe v United Social and Mental Health Services, Inc v Reddington et al**, 670 F Supp 1121, 1132 ( D. Conn. 1987).

The Court, in **Doe v United Social and Mental Health Services, Inc v Reddington et al**, 670 F Supp 1121, 1132 ( D. Conn. 1987), had to assess whether Connecticut would recognize a question of liability against a halfway house for

negligently accepting, supervising and allowing the escape of a parolee who caused harm to a third person. The **Doe** Court affirmatively upheld a claim, against an assertion of sovereign immunity. The **Doe** Court began by recognizing that "the common law has long imposed a duty to prevent foreseeable harm upon those who have custody or control of persons with dangerous propensities". Doe v **United Social and Mental Health Services, Inc v Reddington et al**, 670 F Supp 1121, 1131 ( D. Conn. 1987)(citing, W. Prosser & W. Keeton, *Torts* at 383 (5th Ed. 1984); Restatement 2d Torts, sec. 315, 319.[FN9]). The **Doe** Court, drawing upon **Huangs v Gordon**, No. 232611, 6 Conn L.Trib. No. 29 at 17 (Sup. Ct. for Jud. Dist. of New Haven, April 22, 1980) felt that Connecticut courts would not require more than the ordinary tort showing of foreseeability to impose a duty of care on the Defendants. **Doe v United Social and Mental Health Services, Inc v Reddington et al**, 670 F Supp 1121, 1131 ( D. Conn. 1987). The **Doe** Court found that: where a halfway house admitted a defendant into its program, despite his primary alcohol problem; where his criminal record disclosed he had been convicted of shooting a woman while intoxicated; where they knew he left the halfway house without permission and had reason to suspect that he was drinking; where his caseworker knew that Defendant was in Willimantic, fifteen miles away, without transportation to the halfway house and, additionally, knew he was a threat to her and others yet ordered him to return to the halfway house or face arrest - then it could not be said , as a matter of law, that Doe was not placed at foreseeable risk of injury such that the Defendants owed her a duty of care. **Doe v United Social and Mental Health Services, Inc v Reddington et al**, 670 F Supp 1121, 1132-33 ( D. Conn. 1987).

The focus for this court, consequently, is determining whether the duty which Plaintiff claims to have been breached, is one owed the public, or one that is owed him.

> If the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance must be a public and not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages. [**Shore v Stonington,**] 187 Conn [147] at 152, 444 A2d 1379, quoting **Leger v Kelley**, 142 Conn 585, 589-590, 116 A2d 429 (1955). [FN8].
>
> **Cimino v Yale Univ.**, 638 F Supp 952, 960 (D. Conn 1986).
>
> Thus, even where the duty of an official is not ministerial but involves the exercise of discretion, he or she is subject to liability if "the duty to act is clear and unequivocal" such as when a failure to act "would be likely to subject an identifiable person imminent harm.[Shore v Stonington, 187 Conn 147, 153, (1982)]
>
> **Cimino v Yale Univ.**, 638 F Supp 952, 960 (D. Conn 1986).

See also, **Sestito v Groton**, 178 Conn 520, 528 (1979); **Evon Andrews**, 211 Conn 501, 505 (1989); **Stiebitz v Mahoney**, 144 Conn. 443, 446-47 (1957); **Leger v Kelley**, 142 Conn 585, 589-91 (1955).

> The question in each case is whether the facts present a situation where the statute applies, that is, whether a public official's constant general duty to the public has, in addition, subsumed a specific duty to the individual claiming injury. [citation omitted] It is this factual inquiry that should be left for jury determination, whether the alleged duty to the individual arises from other statutes, regulations, or the common law.
>
> Sestito v. **City of Groton** 178 Conn. 520, 528, 423 A.2d 165, 171 (Conn., 1979)

**Conclusion**: The Plaintiff's allegations, if proven, would establish that the Defendants took physical custody of, and established control over, him. The Defendants knew from

observation that he had snorted an unknown quantity of cocaine and then had additionally ingested bags of rock cocaine in an effort to conceal evidence. The Defendants knew from their training that crack was a potent form of cocaine. The Defendants knew from their training that medical help should be summoned for someone who was suspected of swallowing cocaine because its effect could be fatal. The Defendants, while at the Motel 6, acknowledged the propriety of summoning medical help for Plaintiff, as well as the liklihood that Plaintiff probably would be going to a hospital, yet made a conscious choice to put this decision off. The Defendants knew, throughout the ensuing period of delay, that Plaintiff had never been able to cough up all that had been swallowed. Two of the Defendants, during this period of delay, and while the Plaintiff was handcuffed, maced him twice and watered him down, for the ostensible purpose of trying to get him to spit the drugs out even though this was not a technique they had ever used or had ever been trained to view as acceptable.

The duty owed by the Defendants, to summon medical assistance, under these specified circumstances, is one that ran to the Plaintiff, not the public. The Plaintiff's welfare was completely within the physical control of the Defendants. The foreseeability of fatal harm was acknowledged by the defendants both in their recitation of what had been taught them during academy training and prior experience as well as in the content of their discussion at the Motel 6 scene when they acknowledged the propriety of summoning medical help. These facts provide sufficient basis to send the question of the Defendants' liability to the jury. See, **Sestito v Groton**, 178 Conn 520, 528 (1979); **Evon Andrews**, 211 Conn 501, 505 (1989).

(3) *CGS section 7-465 is an express waiver of sovereign immunity.*

The salient provisions of this statute provide that "Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local shall pay on behalf of any employee of such municipality, .... all sums which such employee become obligated to pay for damages awarded for ... physical damages to person... if the employee, at the time of the occurrence, ... was acting in the performance of his duties and within the scope of his employment, and if such occurrence, was not the result of any wilful or want act of such employee in the discharge of such duty." CGS sec 7-465(a). The statute expressly eliminates the defense of sovereign immunity: "*Governmental immunity shall not be a defense in any action brought under this section.*" **Id** (*Emphasis supplied.*)

The case of **Sestito v Groton**, 178 Conn 520 (1979) is informative. Therein, an administratrix of the decedent's estate sued the town and its police officer for wrongful death injuries described as having occurred during a public disturbance and alleged to have been substantially caused by the police officer's failure to intervene. The **Sestito** court determined that if the police officer was aware of a disturbance of some proportions and did not immediately attempt to stop it; nor try to intervene when the opportunity to do so existed, then a jury could find negligence on the town's part. **Sestito v Groton**, 178 Conn 520, 526 (1979). The **Sestito** Court took occasion to discuss the relationship that CGS sec 7-465 played in relation to this negligence count:

> In count two, the plaintiff alleged that [the police officer] caused injury to her decedent. In count three, she alleged that the town, under General Statutes sec 7-465, was liable for the injury caused by its employee [the police officer]. The statute indemnifies municipal employees who, acting in the scope of their employment, become obligated to pay damages for injury to person or property. A plaintiff bringing suit under General Statutes sec 7-465 first must allege in a separate count and prove the employee's duty to the individual injured and the breach thereof. Only

then may the plaintiff go on to allege and prove the town's liability by indemnification. Fraser v Henninger, 173 Conn 52, 56-57 (1977); Kostyal v Cass, 163 Conn 92, 97 (1972); Martyn v donlin, 148 Conn 27, 32 (1961).

> **Sestito v Groton**, 178 Conn 520, 526-527 (1979).

**(4)** *The provisions of CGS 7-465 preclude Defendants' counsel from asserting a defense in behalf of the municipality that would leave any of the defendants exposed for individual payment of the verdict.*

Counsel for the defendants have entered appearance for all three individual defendants as well as the Town of Windsor Locks. Although this is permissible, it necessarily implies that defense counsel has made a determination that there is no conflict of interest in entering an appearance for all named defendants. Moreover, the express terms of CGS sec 7-465 sets forth an express condition for any defense counsel who enters appearance in behalf of individual officers as well as the town:

> In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become a part of the pleadings or judgment file, that it will pay any verdict rendered in such action against such employee.
>
> CGS sec. 7-465 (a)

Defense counsel, under the express condition set forth by statute, qualifying his ability to enter and defend all parties, is estopped from arguing: "To the extent that the plaintiff has asserted claims that allege intentional torts, not only is the Town not liable for intentional torts, no indemnification is allowed as a matter of law." *Def's memo*, p 24.

Case 3:01-cv-01203-AVC   Document 42-2   Filed 08/01/2003   Page 13 of 15

39

## PLAINTIFF'S COMPLAINT DOES NOT SOUND IN MEDICAL MALPRACTICE AND, CONSEQUENTLY, DOES NOT REQUIRE A CGS §52-190a CERTIFICATE OF GOOD FAITH

This component of Defendant's Motion for Summary Judgment does not warrant serious consideration. The allegations of Plaintiff's complaint do not address the exercise of medical treatment carried out upon, or for the benefit of the plaintiff. Rather, Plaintiff complains that the Defendants did not summon medical assistance.

The requirement of §52-190a applies only to medical malpractice claims. **Wood v. American Medical Response of Connecticut, Inc.**, 2002 WL 1457740, *2 (Conn. Super. Ct. 2002); **Peregolise v. Saint Raphael Healthcare**, 2002 WL 31818470, *3 (Conn.Super.,2002).

> [T]he relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment. See *Spatafora v. St. John's Episcopal Hospital,* 209 App. Div.2d 608, 609, 619 N.Y.S.2d 118 (1994).
>
> **Trimel v. Lawrence & Memorial Hosp. Rehabilitation Center**, 61 Conn.App. 353, 358, 764 A.2d 203, 207 (Conn.App.,2001)

The Plaintiff did not have a patient relationship with any of the named Defendants. A fiduciary relationship exists between a medical care provider and patient. See, **Villa Construction. Inc. v. Southington Savings Bank**, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 540241 15 Conn. L. Rptr. 116 (August 3, 1995) (Corradino, J.); **Valentino v. Gaylord Hospital**, 6 Conn. L. Rptr. 87, 88 (February 19, 1992) (Lewis, J.); **Johnson v. Wadia**, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 075560 (March 28, 1991) (Lewis, J.);

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

**Rave v. Meriden-Wallingford Hospital**, 4 CSCR 559, 560 (June 2, 1989) (Berdon, J.) **Starratt v. Spencer** 1995 WL 749549, *2 (Conn.Super.,1995).

A "fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other ... " **Konover Development Corp. v. Zeller**, 228 Conn. 206, 219, 635 A.2d 798 (1994). The ethical obligation of a treating physician is to protect the fiduciary and confidential nature of the physician-patient relationship. **Chemical Bank v. Executive Management Co., Ltd**. 1995 WL 774526, *6 (Conn.Super.,1995).

The Defendant police did not have a fiduciary or confidential relationship with Plaintiff that required them to protect in confidence the information they obtained pertaining to his observed use and ingestion of drugs. The Defendants had an adversarial relationship with Plaintiff. The Defendants' professional goal, if properly carried out, would have been to consider all information taken and received from Plaintiff as publishable in the public forum of a criminal prosecution.

**Conclusion:**

Not one of the **Trimel** considerations informs the relationship between Plaintiff and Defendants. They are not sued in their capacity as medical professionals. The Defndants alleged negligence is not of a specialized medical nature and does not arise of a professional patient relationship. The alleged negligence is not substantially related to medical treatment.

WHEREFORE, it is respectfully requested that Defendants' Motion for Summary Judgment be denied.

Respectfully Submitted, by

_____
Kimball Haines Hunt, Plaintiff's counsel
Fed. Bar #: CT00266
Hunt, Leibert, Chester & Jacboson, P.C.
50 Weston Street
Hartford, CT 06120
(860) 808-0606, Ext. 5120

**CERTFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, of even date to:

John Radshaw, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Ct 06114-1190

_____
Kimball Haines Hunt
Fed. Bar # CT00266