UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTATE OF DAVID COTTON | CIVIL ACTION NO. |
| | 3:01CV01203(AVC) |
| V. | |
| RICHARD J. BOWEN IV,<br>JEFFREY ANGELL, DANIEL SQUIRES,<br>AND TOWN OF WINDSOR LOCKS | NOVEMBER 4, 2003 |

**PLAINTIFF'S PORTION OF THE JOINT TRIAL MEMORANDUM**

Comes now, plaintiff in the above captioned action and submits to the Court their portion

of the Joint Trial Memorandum:

1) **TRIAL COUNSEL**

> Kimball Haines Hunt
> Hunt Leibert Chester & Jacobson, P.C.
> 50 Weston Street
> Hartford, CT 06120
> > For the Plaintiff

> John Radshaw, Esq.
> Howd & Ludorf
> 64 Wethersfield Avenue
> Hartford, CT  06114-1190
> > For the Defendants

2) **JURISDICTION**

> 4th and 14th Amendments to the United State Constitution;

> 42 USC Sections 1983 and 1988;

> Sections 7 and 9 of the Connecticut Constitution;

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

CGS 7-465; and

Plaintiff also asserts a state based cause of action sounding in common law negligence.

3)    **JURY/NON-JURY**

Tried by Jury.

4)    **LENGTH OF TRIAL**

Seven to Ten days

5)    **FURTHER PROCEEDINGS**

For the Plaintiff: Porter Challenge to Joseph Stein's capacity to deliver opinion on police obligation to summon medical assistance for custodial detainee suspected to have ingested crack cocaine.

For the Defendants:

6)    **NATURE OF CASE**

For the Plaintiff: The Plaintiff, as Administrator of the Estate of David Cotton, contends that Defendants, Officers Bowen , Angell and Squires assaulted Plaintiff's decedent causing him to suffer physical injury and ultimately death.  Plaintiff contends that Defendants' conduct violated decedent's rights under the 4th and 14th Amendments to the United States Constitution, 42 U.S.C §§ 1983 and 1988, Article 1st, Sections 7 and 9 of the Connecticut Constitution, and under a theory of  State common law negligence in that decedent was denied his right to be secure in his person while in the presence of police officers; his right not to be subjected to summary punishment; his right to be immune from assault and battery through the use of excessive force by persons acting under color of law; and his right to be

HUNT LEIBERT CHESTER & JACOBSON, P.C.  ●  ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

immune, while in custody of persons acting under color of law, from behavior which recklessly created or enhanced the likelihood of his death.  Plaintiff further contends that Defendants deliberately refused or delayed obtaining medical care for decedent which, if provided, would have saved his life.  Defendants deliberately employed pepper spray and a fire hose upon decedent thereby exacerbating his critical condition at a time when he was recognized to be in need of emergency medical assistance. Plaintiff also asserts a state based cause of action sounding in common law negligence. The claim of vicarious liability against the Town of Windsor Locks is based upon provisions of CGS 7-465 which waive Sovereign Immunity and require "Any town...notwithstanding any inconsistent provision of law, .... (to) pay .... all sums ... by reason of the liability imposed ... for damages awarded for infringement of any person's civil rights or for physical damages to person ...".

Plaintiff seeks monetary damages, punitive damages and any other such relief as law and equity may provide.

For the Defendant:

7)    **TRIAL BY MAGISTRATE JUDGE**

Plaintiff has no objection to having Judge Thomas P. Smith presiding at trial.  See attached appended agreement.

8)    **LIST OF WITNESSES**

For the Plaintiff:

1)    Officer Richard J. Bowen, IV  #109
       Windsor Locks Police Department
       4 Volunteer Drive
       Windsor Locks, CT 06096

HUNT LEIBERT CHESTER & JACOBSON, P.C.  ●  ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

Officer Bowen will testify to all aspects of his involvement with Mr. Cotton's death including:

(a) His arrival at the Motel 6 at 12:48, the morning of 9/21/00 where he observed David Cotton passed out or asleep in a parked van, with the engine running and his shirt front bespeckled with white pieces of powdered narcotics:

(b) Bowen will relate his observation of Cotton's state of confusion once aroused. Cotton will be described by Bowen as looking for a lighter, all the while holding one in his hand. Bowen will relate that he ordered Cotton out of the van and conducted a pat down without incident. Bowen will relate having found no weaponry but discovering $5k in Cotton's right front pants pocket. Bowen will testify that he observed Cotton put drugs in his mouth. Bowen will be demonstrated to have claimed to an ambulance attendant that Cotton was observed swallowing "bags of crack". Bowen will be revealed as having told his supervisor, Squires, that Cotton "swallowed quite an amount of crack." Bowen will be identified as having told an emergency room physician that Cotton had put something in his mouth and swallowed contents. Bowen will acknowledge that he thought it was crack cocaine that Cotton had ingested. Bowen will testify that he felt it necessary to attempt retrieving what Cotton had ingested. Bowen will testify that he ordered Cotton to get down on his knees. Bowen will acknowledge that he could not get Cotton to open his mouth. Cotton was bitten by Angell's police dog Niko and a piece of Cotton's

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

4

mouth content flew out and landed on Bowen's arm. This was field tested and confirmed as rock cocaine.

(c) Bowen will admit that police academy training identified what cocaine and crack were; that crack is a more potent derivative of cocaine; that crack presents a toxic danger to users. Bowen will acknowledge that he knew Cotton had ingested crack; that the amount ingested was unknown and that its potency could not be determined simply from observation. Bowen will admit that he knew, at the time of responding to the Motel 6 scene that medical help should be summoned for someone suspected of swallowing crack because it could be fatal. He knew that an ambulance was available.

(d) Bowen will admit that instead of calling for an ambulance he brought Cotton back to police headquarters. Bowen will admit that he again placed Cotton on his knees upon arrival at the police station. Bowen will admit that he maced Cotton twice. Bowen will admit that the mace was delivered while Cotton was handcuffed behind his back. Bowen will admit that the mace was delivered while Cotton was on his knees. Bowen will admit that his only reason for inflicting the Mace upon Cotton was for the purpose of extracting the crack cocaine in Cotton's mouth or throat. Bowen will be revealed as having told Angell that Cotton was choking at the time that the Mace was delivered. Bowen will admit that there is nothing in academy training or his prior police experience that identifies macing a handcuffed prisoner for the purpose of extracting drugs, as

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

5

acceptable. Bowen will admit that when the decision to call an ambulance

was finally made, it was based upon the same considerations as were

present at the Motel 6 scene

Estimated Length of Testimony: 1 day

Estimated Length of Cross-Examination: 1 day

2)      Officer J. Angell (K-9 officer)
        Windsor Locks Police Department
        4 Volunteer Drive
        Windsor Locks, CT 06096

        Officer Angell will testify to all aspects of his involvement with

Mr. Cotton's death including:

        (a) Having arrived on the Motel 6 scene just as Bowen ordered

Cotton out of his van. Angell will confirm having witnessed Cotton's pat

down. Angell will acknowledge agreeing to keep an eye on Cotton while

Bowen carried out a search of the van. Angell will admit that Bowen

signaled having seen Cotton swallow drugs. Angell will confirm that

Cotton was put on his knees so that Bowen could try to retrieve the crack

cocaine that had been ingested. Angell will admit that the reason he

brought his dog (Niko) to bear on Cotton was because the latter was

perceived as refusing to open his mouth to comply with Bowen's

attempted retrieval of drugs. Angell will admit that after Niko confronted

Cotton, the latter spit out a chunk that was tested and found to be crack

cocaine.

        (b) Angell will Bowen will admit that police academy training

identified what cocaine and crack were; that crack is a more potent

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

derivative of cocaine; that crack presents a toxic danger to users. Angell

will acknowledge that he knew Cotton had ingested crack; that the amount

ingested was unknown and that its potency could not be determined

simply from observation. Angell will admit that he knew, at the time of

responding to the Motel 6 scene that medical help should be summoned

for someone suspected of swallowing crack because it could be fatal. He

knew that an ambulance was available. Angell will recall having a

conversation at the Motel 6 with Squires and Bowen concerning the need

to summon medical help for Cotton. Angell will recall his impression that

either Squires or Bowen mentioned that Cotton would probably be going

to the hospital.

Estimated Length of Testimony: 1 day

Estimated Length of Cross-Examination: 1 day

3)    Officer Daniel Squires #108
      Windsor Locks Police Department
      4 Volunteer Drive
      Windsor Locks, CT 06096

Officer Squires will testify to all aspects of his involvement with

Mr. Cotton's death including:

(a) Having been the supervising officer on the Motel 6 scene after

arrival. Squires will relate having arrived at a time when Bowen and

Angell were standing by Cotton who had been handcuffed behind his

back. Squires will acknowledge having remained on the Motel 6 for as

long as a half hour. Squires will acknowledge that he failed to record both

his time of arrival at, and his time of departure from, the Motel 6 scene.

Squires did admit not placing in his report the time of arrival at the Windsor Locks police station. Squires will admit that, at the Motel 6 scene, Cotton's face was lathered in sweat even though it was not hot outside. Squires will acknowledge that sweating is one of the signs consistent with the presence of drug overdose.

(b) Squires will admit that police academy training identified what cocaine and crack were; that crack is a more potent derivative of cocaine; that crack presents a toxic danger to users. Squires will admit that he knew, at the time of responding to the Motel 6 scene that medical help should be summoned for someone suspected of swallowing crack because it could be fatal. He knew that an ambulance was available. Squires will acknowledge that the decision to bring Cotton to the police department was made jointly with Bowen.

(c) Squires will admit that there was nothing in police training that identified Mace as a tool to be used on a handcuffed prisoner to extricate mouth contents. Squires will acknowledge that he had never maced a handcuffed prisoner. Squires will concede that he had never seen a handcuffed prisoner maced for the purpose of getting him to spit out drugs. Squires will admit that he hosed Cotton while the latter was handcuffed, and after Bowen was through with the double episodes of macing. Squires will admit that Cotton was required to remain on his knees while he was hosed down.

Estimated Length of Testimony: 1 day

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

Estimated Length of Cross-Examination: 1 day

    4)      Police Chief John Suchocki
            Windsor Locks Police Department
            4 Volunteer Drive
            Windsor Locks, CT 06096

            Chief Suchocki will testify as to the policies and procedures in his department regarding the summoning of medical personnel; the use of mace and water as tools for the extraction of contraband from a prisoner's mouth; the requirements of completing use of force forms; the purposes served by and policies informing the crafting of incident reports. He will also testify as to his observations and conversations before, during and after his initial trip to Hartford Hospital. Also, he will testify as to any conversations with Officers Squires, Angell and Bowen regarding the circumstances of cuffing, detention and use of the attack-trained canine.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

    5)      Detective Sargent Ricardo Rachele
            Windsor Locks Police Department
            4 Volunteer Drive
            Windsor Locks, CT 06096

            Detective Sargent Rachele will testify as to his involvement in the investigation of the incident after Mr. Cotton was taken to Hartford Hospital, including but not limited to the scene, conversations and any other observations noted in his report and not in his report.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

6)      Police Dispatcher Jopeck #C4
        Windsor Locks Police Department
        4 Volunteer Drive
        Windsor Locks, CT 06096

        Police dispatcher Jopeck who was on duty for the incident in

question will testify as to any and all conversations he had with the

officers that arrived on the Motel 6 scene as radio dispatcher for the

Windsor Locks Police Department. Said dispatcher will also identify the

point in time when he was directed to summon an ambulance as well as

the reported basis or need for doing so.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

7)      Stan Akesson, Paramedic
        Windsor Locks Lions Ambulance Corps
        P.O. Box 105
        Windsor Locks, CT 06096

        Mr. Akesson will identify his training and experience as a licensed

paramedic. He will testify that on the night he was asked to respond to the

Windsor Locks Police Department, he was working for the Windsor Locks

Lions Ambulance on the 6 pm to 6 am shift. Mr. Akesson will testify that

upon arrival at the Windsor Locks Police Department Mr. Cotton was

handcuffed behind his back and situated between Bowen and Squires. Mr.

Akesson will testify that he was blocked from his initial attempt to provide

aid to Mr. Cotton. Mr. Akesson will testify that he was directed to stand

back. Mr. Akesson will advise that he was never told by the two

policeman that Mr. Cotton had been maced. Mr. Akesson will relate that

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

the policemen told him that water had been employed on Mr. Cotton in an attempt to try and remove bags of drugs that Mr. Cotton had been observed swallowing. Mr. Akesson will testify that this made so little sense to him, that he became immediately concerned that Mr. Cotton had been choking the entire time that he had been in police custody. Mr. Akesson will confess that his concern about police conduct led him to fear that the Ambulance Run Sheet that he was required to fill out, would become a source document for criticism of the Windsor Locks Police. Mr. Akesson will admit that he knowingly deviated from charting protocol in filling out his run sheet in the following particulars: (a) he refrained from identifying, on the run sheet chart, that Cotton's "mechanism of injury" was "ingestion" even though there was a place provided for just this specific particular; (b)he reported that Cotton used inappropriate words when in fact Cotton made no response; (c) He described Cotton as demonstrating "abnormal flexion or abnormal extension" when in fact he knew that accuracy required him to record that Cotton made "no response" because he was lying supine on the floor and not moving; (d) he incorrectly described Cotton as having "dilated pupils" when he could not remember whether Cotton's eyes were open much less reactive to light; (e) he circled a box on the run sheet that said "No" for cardiac arrest despite the fact that this was not accurate; (f) he failed to preserve any cardiac monitor strip demonstrating that Cotton had an erratic beat ("v-fib) despite knowing that the standard of care required same in order to justify

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

application of electric shock; (g) he falsified his entry of time for when Cotton was determined to have been found asystolic.

Mr. Akesson will testify that Bowen never admitted using mace on Mr. Cotton. Mr. Akesson will testify that Bowen told him Cotton attempted running away from the officers at the Motel 6 scene. Mr. Akesson will identify that the reason Bowen gave, for employing the police dog named Niko, was because Cotton tried to run. Mr. Akesson will testify that Bowen described Cotton as swallowing bags of crack as he tried to run away.

Mr. Akesson will testify that once he was allowed to approach Mr. Cotton, then he discovered and ultimately removed a white bag from his throat.

Estimated Length of Testimony: 2 hours

Estimated Length of Cross-Examination: 2 hours

8)    Nicole Ruggiero, EMT
      Windsor Locks Lions Ambulance Corps
      P.O. Box 105
      Windsor Locks, CT 06096

Ms. Ruggiero will testify as to her involvement with the care and ultimate demise of Mr. Cotton. She will testify as to his knowledge and use medical techniques typically used in matters of this nature and as well the specific procedures used and not used in this matter. She will also testify to Mr. Cotton's demeanor before, during and after the arrival of medical personnel. She will also testify as to all conversations held with

HUNT LEIBERT CHESTER & JACOBSON, P.C.  ●  ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

any and all agents of the Windsor Locks Police Department or hospital

personnel regarding Mr. Cotton.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

9)    Kelly Zimmer, EMT
      Windsor Locks Lions Ambulance Corps
      P.O. Box 105
      Windsor Locks, CT 06096

Ms. Zimmer will identify her training and experience as an

intermediate EMT. She will testify of her involvement in responding to the

Windsor Locks Police Department's request for emergency response for

Mr. Cotton. She will testify that she was the person who had the

responsibility for attaching leads from the heart monitor to Mr. Cotton. Ms

Zimmer will identify that Mr. Cotton had no heart beat and he had no

respirations.  Ms Zimmer will testify that upon these findings, ambulance

personnel proceeded with "asystole protocols" and advised Bowen to

drive the ambulance to the Hartford Hospital.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

10)    Dr. Marc J. Bayer, Vice Chairman
       Department of Traumatology & Emergency Medicine
       University of Connecticut Health Center
       Farmington, CT 06032

Dr. Bayer will identify the training and experience which has

enabled him to become the Chief of Toxicology for the State of

Connecticut. He will identify the publications he has authored and

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

13

contributed to, as well as his teaching and clinical responsibilities. He will

identify the several contexts in which he has been accepted as an expert

within the Courts of Connecticut and other states. He will identify the

materials he reviewed in this case in order to provide opinions. He will

provide opinion testimony, based upon medical probability, that Mr.

Cotton would have survived if he had been brought to the hospital without

unreasonable delay by the Windsor Police Department. Dr Bayer will

discuss the toxic effects that cocaine and crack can produce on the body.

He will discuss the treatment modalities that are available to treat, arrest or

retard the effects that can follow from cocaine or crack ingestion. Dr

Bayer will opine that the police had an obligation to bring Mr. Cotton to

the hospital. He will also testify that Mr. Cotton's cause of death was

exacerated by an occluded airway, the application of mace and water

while in a state of occlusion and that his ultimate demise was from an

overdose of cocaine.

Estimated Length of Testimony: 3 hours

Estimated Length of Cross-Examination: 3 hours

11)    Dr. Edward J. Shaughnessy
       Room 520 T
       John Jay College of Criminal Justice
       899 10th Avenue
       New York, NY 10019

           Dr. Shaughnessy will identify his training, and clinical experience.

He will identify his current teaching responsibility at the John Jay College

of Forensic Science. He will identify the materials that he was provided

14

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

and identify what it was in the reviewed materials that was of material

assistance in the formation of his opinions. He will provide opinion

testimony that the Defendant Officers, in this case, once having taking

custody and control of Mr. Cotton, and knowing that he had ingested rock

cocaine, had the responsibility to summon available medical assistance.

He will provide opinion that administration of mace and/or water to a

handcuffed prisoner for the purpose of attempting to extract drugs is not

accepted police procedure. He will provide opinion that the administration

of mace and/or water to a prisoner who has or should be regarded as

having a partially occluded airway, is not accepted police procedure. He

will provide opinion that accepted police procedure would have required,

in the circumstances of this case, the summoning of medical assistance no

later than the time when Bowen field tested and confirmed that what Mr.

Cotton had been seen to ingest was in fact rock cocaine.

Estimated Length of Testimony: 2 hours

Estimated Length of Cross-Examination: 2 hours

12)    Dr. Robert Katz or other attending room physicians
       Hartford Hospital
       80 Seymour Street
       Hartford, CT 06106

       Dr Katz provided deposition in order to preserve testimony. He is

in Florida and will not be available for the provision of personal

testimony. Dr Katz's deposition will be read in his place. Dr Katz's

deposition will identify that he was an Emergency Room physician

working at Hartford Hospital when Mr. Cotton was brought in. Dr Katz

15

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

will identify that he obtained a history from a police officer who acknowledged being on the scene with Mr. Cotton. Dr Katz will clarify that the history he wrote as part of the Hartford Hospital records was based upon what he was told by this police officer. Dr Katz testimony will identify Mr. Cotton's medical condition, the examination that was carried out, the findings that were made as well as the procedures and modalities that were available at Hartford Hospital for addressing suspected drug overdose.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

13)    Malka B. Shah, M.D.
       Office of the Chief Medical Examiner
       11 Shuttle Road
       Farmington, CT 06032

Dr. Shah will identify the training and experience which enables her to serve as a Medical Examiner for the State of Connecticut. She will provide testimony identifying what an autopsy is, how it is carried out, and the purposes served by its conduct. She will testify that she carried out an autopsy on Mr. Cotton. She will identify her findings which included dog bite wounds in several areas of Mr. Cotton's body. She will also testify to any and all conversations had with any agent of the police department or other medical personnel involving Mr. Cotton and the subject incident.

Estimated Length of Testimony: 2 hours

Estimated Length of Cross-Examination: 1 hour

16

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

14)     Samuel Saylor
        54 Boothbay Street
        Hartford, CT 06112

        Mr. Saylor will testify as a family member to Mr. Cotton and as the Estate Administrator. He will testify as to Mr. Cotton's life prior to the incident on September 21, 2000, including but not limited to his interactions with family and friends. He will also testify as to his observations made while at Hartford Hospital as well as any conversations had with medical personnel or police department personnel.

        Estimated Length of Testimony: 2 hours

        Estimated Length of Cross-Examination: 2 hours

15)     Rowena Cotton-Camby
        8 Englewood Avenue
        Bloomfield, CT

        Ms. Cotton-Camby will testify as a family member to Mr. Cotton and as an administrative associate for the Emergency Room Department in Hartford Hospital. She was present the night of September 21, 2000. She will testify as to Mr. Cotton's life prior to the incident on September 21, 2000, including but not limited to his interactions with family and friends. She will also testify as to her observations made while at Hartford Hospital that night as well as any conversations had with medical personnel or police department personnel.

        Estimated Length of Testimony: 1 hour

        Estimated Length of Cross-Examination: 1 hour

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

16)     Ann Cotton
        8 Englewood Avenue
        Bloomfield, CT

       Ms. Cotton will testify as a family member to Mr. Cotton. She will testify as to Mr. Cotton's life prior to the incident on September 21, 2000, including but not limited to his interactions with family and friends. Ms. Cotton will also testify to any and all conversations she had with any agent or employee of the Windsor Locks Police Department during their investigation of this matter as well as any observations or conversations made when picking up Mr. Cotton's belongings from Windsor Locks Police Department's custody

       Estimated Length of Testimony: 1 hour

       Estimated Length of Cross-Examination: 1 hour

17)     Alma Cotton
        8 Englewood Avenue
        Bloomfield, CT

       Ms. Cotton will testify as a family member to Mr. Cotton. She will testify as to Mr. Cotton's life prior to the incident on September 21, 2000, including but not limited to his interactions with family and friends.

       Estimated Length of Testimony: 1 hour

       Estimated Length of Cross-Examination: 1 hour

18)     Gabriella Saylor
        54 Boothbay Street
        Hartford, CT

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

Mrs. Saylor will testify as a family member to Mr. Cotton.  She

will testify as to Mr. Cotton's life prior to the incident on September 21,

2000, including but not limited to his interactions with family and friends.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

19)     Anthony Cotton
        8 Englewood Avenue
        Bloomfield, CT

Mr. Cotton will testify as a family member to Mr. Cotton.  He will

testify as to Mr. Cotton's life prior to the incident on September 21, 2000,

including but not limited to his interactions with family and friends.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

20)     Harold Cotton
        8 Englewood Avenue
        Bloomfield, CT

Mr. Cotton will testify as a family member to Mr. Cotton.  He will

testify as to Mr. Cotton's life prior to the incident on September 21, 2000,

including but not limited to his interactions with family and friends.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

21)     Alexander Cotton
        8 Englewood Avenue
        Bloomfield, CT

HUNT LEIBERT CHESTER & JACOBSON, P.C.  ●  ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

Mr. Cotton will testify as a family member to Mr. Cotton. He will

testify as to Mr. Cotton's life prior to the incident on September 21, 2000,

including but not limited to his interactions with family and friends.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

22)    Mary Cotton
Dear Meadows Road
Bloomfield, CT

Ms. Cotton will testify as a family member to Mr. Cotton. She will

testify as to Mr. Cotton's life prior to the incident on September 21, 2000,

including but not limited to his interactions with family and friends.

Estimated Length of Testimony: 1 hour

Estimated Length of Cross-Examination: 1 hour

For the Defendants:

9)    **<u>EXHIBITS</u>**

<u>For the Plaintiff:</u>

1) Hartford Hospital Medical Records

2) Medical Examiner's Report

3) Windsor Locks Police Department Incident Report for #00-12666 dated

09/21/2000 by Investigating Officer Richard J. Bowen IV (4 pages)

4) Windsor Locks Police Department Continuation Report for Incident

#00-12666 dated 09/21/2000 by Investigating Officer Jeffrey Angell (3 pages)

5) Windsor Locks Police Department Continuation Report for Incident

#00-12666 dated 09/21/2000 by Investigating Officer Daniel Squires (1 page)

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

20

6) Windsor Locks Police Department Continuation Report for Incident #00-12666 dated 09/21/2000 by Investigating Officer Detective Sgt. Ricardo Rachele (8 pages)

7) Windsor Locks Police Department Continuation Report for Incident #00-12666 dated 09/21/2000 by Investigating Officer Sgt. Francis Baron (1 page)

8) Windsor Locks Police Department Continuation Report for Incident #00-12666 dated 09/21/2000 by Investigating Officer Captain Chester DeGray (2 pages)

9) Dispatch Logs maintained by Windsor Lock Police Department regarding the incident that is subject of this litigation

10) Windsor Locks Police Department General Order #87-09

11) Deposition of Joseph Stine (for impeachment purposes)

12) Deposition of Officer Richard J. Bowen, IV (for impeachment purposes)

13) Deposition of Officer Daniel Squires (for impeachment purposes)

14) Deposition of Officer Jeffrey Angell (for impeachment purposes)

15) Deposition of Stanley Akesson (for impeachment purposes)]

16) Deposition of Kelly Zimmer (for impeachment purposes)

17) Deposition of Edward Shaunghnessy (for impeachment purposes)

18) Deposition of Robert S. Katz (unavailable witness)

19) Windsor Locks Lions Ambulance Corps PreHospital Patient Care Report signed by Stanley Akesson dated 09/21/00 (2 pages)

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

20) Windsor Locks Lions Ambulance Corps PreHospital Patient Care Report signed by Stanley Akesson dated 09/21/00 with Peer Review Audit Form (5 pages)

21) Voluntary Statement by Stanley A. Akesson dated September 21, 2000 (3 pages)

22) Voluntary Statement by Nicole Ruggiero dated September 21, 2000 (2 pages)

23) Voluntary Statement by Kelly Ann Zimmer dated September 21, 2000 (4 pages)

24) Windsor Locks Police Department Use of Oleoresin Capsicum Aerosol Form for Case #00-12666 (typed)

25) Windsor Locks Police Department Use of Oleoresin Capsicum Aerosol Form for Case #00-12666 (handwritten)

26) Life Table, from the Centers for Disease Control and Prevention/national Center for Health Statistics, reflecting that David Cotton's actuarial life expectancy was 60.4 years.

For the Defendants:

10) **TRIAL TO COURT/JURY**

    a)    Court: not applicable

    b)    Jury:

        i) Proposed Voir Dire Questions:

        For the Plaintiff:

        1. Do any of you hold the opinion that suing a police officer under any circumstances is inappropriate or wrong?

2. Do any of you hold the opinion that a police office should not have to answer in Court to a claim of having used unlawful, excessive, or wrongful force, regardless of circumstance?

3. Do any of you hold the opinion that, once a person is lawfully taken into custody by police, he loses all rights and privileges to be reasonably secure and safe in his person?

4. Are there any of you who feel that a police officer has the right to use unnecessary, unreasonable, or excessive force?

5. Are there any of you who feel that a police officer has the right to consciously disregard a recognized need to procure medical attention for an arrestee ?

6. Are there any of you who feel that a person, who is known to have ingested illegal drugs, should not be entitled to rely upon the protections of the State and Federal Constitutions?

7. Are there any among you who feel that the observations or recollections of a police officer should be entitled to more credit, attention, or weight, simply because it comes from one who is in the profession of law enforcement?

8. Do any of you hold the opinion that a police officer is less likely to be mistaken about his or her recollections or observations simply because they have received training in a police academy and have served in the capacity of a law enforcement officer?

9. Are there any among you who feel that anyone who is involved with the use of illegal narcotics deserves whatever happens to them, regardless of circumstance?

10. Are there any among you who would be reluctant to deliver a verdict in favor of a claimant, who had properly proven unlawful, excessive, or wrongful use of force by police, simply because the claimant had been involved with the use of illegal narcotics?

11. Are there any among you who feel that the aspect of law which permits a claim to be maintained by the Estate of a person who has died, is inappropriate or impractical because there are no practical benefits a dead person can obtain from legal process?

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

12. Are there any among you who would be reluctant or hesitant to deliver a verdict in favor of a claimant simply because it meant being critical of a law enforcement officer?

13. Are there any among you who would be reluctant or hesitant to deliver a verdict in favor of a claimant simply because of the effect, it might be perceived as having, on the municipality that employs the police officer that has been sued?

14. Are there any among you who would be reluctant to award punitive damages in a proper case simply because it was directed against a law enforcement officer?

15. Are there any among you who would be reluctant to award punitive damages in a proper case simply because of the effect, it might be perceived as having, on the career of the law enforcement officer?

16. Are there any among you who feel that the component of a juror's sworn obligation - to translate pain and suffering into a monetary award- assuming that a proper basis can be found in the evidence and in accordance with the law provided by this court- is simply too abstract or impractical to be properly carried out?

17. Are there any among you who feel that the component of a juror's sworn obligation, to place a monetary value on the wrongful deprivation of life - assuming that a proper basis can be found in the evidence and in accordance with the law provided by this court- is simply too abstract or impractical to be properly carried out?

For the Defendants:

ii) Proposed Jury Instructions:

For the Plaintiff:

**1. Excessive Use of Force:**

The 4th Amendment to the United States Constitution, as well as Sections 7 and 9 of the Connecticut State Constitution, set the limit on the amount of force police officers may use in the course of an arrest, investigatory stop, or other "seizure" of a free citizen. See Graham v. Connor, 490 U.S. 386, 395 (1989); State v. Rizzo, 2003 W.L. 22326612 * 13 (Conn. 2003).

24

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

All claims that law enforcement officers have used excessive force ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to the officer's underlying intent or motivation. Gargiulo v. Town of East Haven, 2000 W.L. 1170901 (Conn. Super. 2000). An officer's good intentions will not make an objectively unreasonable use of force constitutional. Graham v. Connor, 490 U.S. 386, 395 (1989); Ricketts v. City of Hartford, 74 F3d 1397, 1411 (Conn. 1996).

**2. Assessment of Excessive Force:**

The jury, in assessing the merits of plaintiff's excessive force claims, must pay careful attention to the facts and circumstances that were present at the time. Plaintiff has claimed, in this case, that there was excessive force in employing mace, using a canine, and in recklessly enhancing or creating the likelihood of death and/or failing to summon medical assistance.

With regard to the use of mace and/or the police canine, the jury should include in its assessment of the facts and circumstances:

A.    The severity of the crime at issue;

B.    Whether Mr. Cotton, while in the custody of the defendant officers, posed an immediate threat to the safety of the officers;

C.    Whether Mr. Cotton was actively resisting arrest or attempting to evade arrest by flight;

D.    The reasons, if any, offered by the defendant police officers for the use of mace or the canine;

E.    Whether or not the use of the dog and/or mace was in accord with identified training and/or customary police procedures.

The jury, in assessing the claim that defendants recklessly enhanced or created the likelihood of death and/or failed to summon medical assistance should assess, among other things,

1.    Whether or not the combination of academy training and field experience enabled the

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

25

defendant officers to know there was an identified correlation between the amount and/or nature of the drugs used (or suspected of being used) and the risk of harm to the user;

2.      Whether or not the defendant officers knew, at the time of responding to the Motel 6 scene, that medical help should be summoned for someone who is suspected of swallowing drugs, in an amount, or of a nature, that could produce a potentially fatal result;

3.      Whether or not the officers, at the time of responding to the Motel 6 scene, knew of, and had the means for summoning, available medical assistance;

4.      Whether or not the defendant officers knew that Mr. Cotton had ingested drugs;

5.      Whether or not the defendant officers knew that the drug ingested by Mr. Cotton was rock cocaine;

6.      Whether or not the officers observed symptoms which they acknowledged to be consistent with the effects of drug overdose;

7.      Whether or not the officers, or any of them, consciously acknowledged the need for obtaining medical attention;

8.      Whether there was any delay in obtaining medical attention once the circumstances identifying that a potentially toxic amount of drugs had been ingested;

9.      What reasons, if any, were relied upon by the defendant officers for any delay that may have occurred in summoning or obtaining medical assistance.

        See generally, Saucier v. Katz, 121 S CT 2151; 2001 WL 672265, II p 8, 2001,

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

CO, Justice Ginsburg, p 10 (2001)

### 3.  Damages not a precise mathematical formula:

It is not acceptable to say that a jury has no comptometer with which to total up values assignable to physical and mental suffering.  Difficulty in computation is not a barrier to full recovery.  The commission of a wrong carries with it the duty to make amends.  And if the mending process is additionally expensive because of problems encountered in ascertaining the cost of pain and suffering, that process becomes part of the obligation the wrongdoer must assume.  As between the innocent victim of a wrong and the person who accomplished the wrong, the law imposes on the malfeasor the obligation to make the victim whole in every phase in which the victim has suffered, to the extent that rehabilitation is possible in terms of money.  See Spangler v. Helm's New York-Pittsburgh Motor Exp., 153 A.2d 490, 491-492 (1959).

### 4.  Mental Suffering:

A plaintiff may recover damages in a personal injury action for pain and suffering even when such pain and suffering is evidenced exclusively by the plaintiff's subjective complaints.  There is no reason to subject a claim of mental suffering, which is ordinarily evidenced by

HUNT LEIBERT CHESTER & JACOBSON, P.C.  ●  ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

subjective complaints, to a stricter scrutiny or greater care than a claim of physical suffering evidenced by the same type of complaints . . . A plaintiff need only establish a claim for mental or emotional distress by a fair preponderance of the evidence . . ."

LaBieniec v. Baker, 11 Conn.App. 199 (1987).

## 5.  Punitive Damages:

[A] jury may be permitted to assess punitive damages in an action under §1983 when the defendant's conduct involves reckless or callous indifference to the federally protected rights of others.

Smith v. Wade, 103 S.Ct. 1625 (1983).

The amount of the punitive award must consider the gravity of the wrong and the need to deter similar wrongful conduct.

Pacific Mut. Life Ins. Co. v. Haslip, 111 S.Ct. 1032 (U.S.Ala.1991).

An award of punitive damages punishes a defendant who has acted recklessly to deny a plaintiff his protected rights, and helps secure rights for others by deterring future violations.

HUNT LEIBERT CHESTER & JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

28

Blackledge v. Carlone, 126 F.Supp.2d 224
(D.Conn. 2001); See also: McFadden v.
Sanchez, 710 F.2d 907 (C.A.N.Y. 1983).

Punitive damages may be awarded in § 1983 cases

even in the absence of a compensatory award. *See, e.g.,*

King v. Macri, 993 F.2d 294, 298 (2d Cir. 1993); Stolberg

v. Members of Board of Trustees, 474 F.2d 485, 489 (2d

Cir. 1973); Robinson v. Cattaraugus County, 147 F.3d 153

(2d Cir. 1998).

## 6. Inapplicability of Contributory Negligence to Reckless Misconduct

The defense of contributory negligence does not apply
where an injury is a result of wilful or wanton conduct. It is our
settled rule that contributory negligence is not a defense to a cause
of action based on reckless misconduct. Bordonaro v. Senk, 109
Conn. 428, 433, 147 A. 136; Grant v. MacLelland, 109 Conn. 517,
521, 147 A. 138; Lionetti v. Coppola, 115 Conn. 499, 503, 161 A.
797.

Heslin v. Malone 165 A. 594, 596 (Conn. 1933); Cheneski v.
Barber 1992 WL 32543, *1 (Conn.Super.,1992); Decker v.
Roberts, 125 Conn. 150, 157 (1939); McMann v. Dignoti 2000 WL
420704, *1 (Conn.Super.,2000)

RESPECTFULLY SUBMITTED
PLAINTIFF

BY_____
Kimball Haines Hunt
Hunt, Leibert, Chester & Jacobson, PC
50 Weston Street
Hartford, CT  06120
(860)808-0606
Federal Bar CT00266

29

HUNT LEIBERT CHESTER & JACOBSON, P.C.  •  ATTORNEYS AT LAW
50 WESTON STREET  •  HARTFORD, CONNECTICUT 06120  •  (860) 808-0606  •  JURIS NO. 101589

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, of even date herewith to:

Attorney John J. Radshaw, III
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114

_____
Kimball Haines Hunt

HUNT LEIBERT CHESTER & JACOBSON, P.C.  •  ATTORNEYS AT LAW
50 WESTON STREET  •  HARTFORD, CONNECTICUT 06120  •  (860) 808-0606  •  JURIS NO. 101589

➤AO 85 (Rev. 8/98) Notice, Consent, and Order of Reference — Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT

District of ~~CONNECTICUT~~

Estate of David Cotton

Plaintiff

V.

Richard J. Bowen IV, Jeffrey Angell,
Daniel Squires, and Town of Windsor Locks
Defendant

NOTICE, CONSENT, AND ORDER OF REFERENCE —
EXERCISE OF JURISDICTION BY A UNITED STATES
MAGISTRATE JUDGE

Case Number:        3:01CV01203 AVC

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Party Represented | Signatures | Date |
|---|---|---|
| Estate of David Cotton | | 11/04/03 |
| | | |
| | | |
| | | |

## ORDER OF REFERENCE

IT IS ORDERED that this case be referred to _____
United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.

_____          _____
Date                                              United States District Judge

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED
<u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.